**SO ORDERED.**

**SIGNED this 6 day of March, 2024.**



_____
Joseph N. Callaway
United States Bankruptcy Judge

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
### GREENVILLE DIVISION

IN RE:

JAMES CHRISTOPHER TYNDALL           Case No. 23-02014-5-JNC
                                    Chapter 13
    Debtor

_____

**NATIONWIDE JUDGMENT RECOVERY, INC.**

    Plaintiff,

v.                                  Adv. Pro. No. 23-00094-5-JNC

**JAMES CHRISTOPHER TYNDALL,**

    Defendant

## ORDER ON MOTION TO DISMISS

Before the court is the second Motion to Dismiss (Dkt. 15; the "Motion") filed January 24, 2024, by defendant/debtor James Christopher Tyndall ("Defendant") in this adversary proceeding. The Motion seeks dismissal of the amended complaint filed January 5, 2024, by plaintiff Nationwide Judgment Recovery, Inc. ("Plaintiff") seeking exception from discharge pursuant to 11 U.S.C. § 523(a)(2)(A) of a $93,159.71 judgment (Dkt. 14; the "Amended Complaint"). Plaintiff opposed the Motion in its filing on February 14, 2024 (Dkt. 16; the "Response"). For the reasons set forth below, the Motion is granted.

## JURISDICTION

The court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 151 and 1334. It is authorized to hear the lead case and this action under the General Order of Reference entered August 3, 1984, by the United States District Court for the Eastern District of North Carolina. The primary matters raised in the adversary proceeding make it a core proceeding pursuant to 28 U.S.C. § 157(b), and the court has statutory authority to enter a final judgment in it. The court also has constitutional authority to enter final judgment in this adversary proceeding. *Wellness Int'l Network, Ltd., v Sharif*, 575 U.S. 665, 135 S. Ct. 1932 (2015).

## PROCEDURAL HISTORY

Defendant filed his chapter 13 petition and schedules in the lead bankruptcy case on July 18, 2023. An October 13, 2023, deadline to file objections to discharge was imposed. Plaintiff timely filed the original complaint in this action on October 6, 2023 (Dkt. 1), in which it asserts an indebtedness of $93,159.71 owed to it by Defendant is nondischargeable in the lead bankruptcy case pursuant to 11 U.S.C. § 523(a)(2)(A). Defendant responded with a first motion to dismiss on October 16, 2023 (Dkt. 6), which was heard on December 6, 2023, in Greenville, North Carolina. Attorney C. Scott Kirk appeared at the hearing on behalf of Defendant; attorney Pamela P. Keenan appeared for Plaintiff. During the hearing, and before the court issued a ruling on the first motion to dismiss, counsel for Plaintiff orally requested leave to amend the Complaint. Under the liberal standard for allowing a request to amend, and having noted on the record of the hearing that in the absence of leave to amend a Rule 12(b)(6) dismissal would be the likely result, the court granted leave to amend. *See* Order on Motion to Dismiss and Allowing Motion to Amend filed on December 12, 2023 (Dkt. 12; the "Order").[1]

---

[1] The factual and procedural background recited in the Order is incorporated by reference.

In the Motion, Defendant again seeks dismissal of the Amended Complaint under Bankruptcy Rule 7012(b)(6), which incorporates Federal Rule of Civil Procedure 12(b)(6). Defendant argues the Amended Complaint fails to plead facts sufficient to support the elements of fraud with the particularity required by Federal Rule of Civil Procedure 9(b). Plaintiff, conversely, asserts that the Amended Complaint cured any pleading deficiencies from the original Complaint and meets the particularity requirement.

## LAW AND ANALYSIS

### 1. Pleading Standards

Rule 8(a)(2) of the Federal Rules of Civil Procedure, made applicable here by Rule 7008 of the Federal Rules of Bankruptcy Procedure, provides that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If a complaint fails to meet this threshold obligation, the action should be dismissed under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court held that a complaint filed in a federal forum must include "enough facts to state a claim to relief that is plausible on its face." 127 S. Ct. 1955, 1974 (2007). As elaborated in *Ashcroft v. Iqbal*, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "only a complaint that states a plausible claim for relief survives a motion to dismiss." 129 S. Ct. 1937, 1949 (2009). Allegations in a federal complaint therefore must be more than a "formulaic recitation of the elements" of a claim. *Id.* at 1951.

A claim has facial plausibility when a plaintiff pleads facts sufficient to allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer

3

possibility that a defendant has acted improperly or unlawfully. *Id.* at 1949.  Dismissal under Rule 12(b)(6) is proper when, from the face of the pleading, it is clear that the claims are not supported by law, that one or more facts necessary to assert a valid claim have not been pled, or that facts exist that necessarily defeat a claim. "Determining whether a complaint states a plausible claim will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1940.

In addition, even when the pleading in support of the claim passes the *Iqbal/Twombly* standard, if the gravamen of the case rests in fraud or mistake (as is the case here), Federal Rule of Civil Procedure 9(b)[2] mandates an asserting party must "state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Statutory exceptions from bankruptcy discharge under 11 U.S.C. § 523(a)(2) sound in fraud and therefore are subject to this heightened pleading standard. *See Nunnery v. Rountree (In re Rountree)*, 478 F.3d 215, 219 (4th Cir. 2007).

2. **The Fraud Exception to Discharge**

The Bankruptcy Code prohibits debtors from discharging debts "obtained by ... false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). The term "actual fraud" in § 523(a)(2)(A) "encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation." *Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581, 1586 (2016). Although the Supreme Court has declined to adopt an all-encompassing definition of actual fraud, it points out that "'[a]ctual fraud' has two parts: actual and fraud." *Id.* "The word 'actual' has a simple meaning in the context of common-law fraud: It denotes any fraud that

---

[2] Federal Rule of Civil Procedure 9 is made applicable in adversary proceedings by Federal Rule of Bankruptcy Procedure 7009.

4

'involv[es] moral turpitude or intentional wrong.'" *Id.* (quoting *Neal v. Clark*, 95 U.S. 704, 709 (1878)). Thus, a mere receipt of funds or value via fraudulent transfers does not equate with "actual fraud;" the additional element of requisite intent or scienter must also be alleged and shown. *Id.* at 1589. "'Actual' fraud stands in contrast to 'implied' fraud or fraud 'in law,' which describe acts of deception that 'may exist without the imputation of bad faith or immorality.'" *Id.* at 1586 (internal citation omitted). In other words, for purposes of Rules 12(b)(6) and 9(b) analysis, if the perpetrator's activity counts as "fraud" and wrongful intent can rationally be gleamed from *particular* facts set out in the pleadings, "actual fraud" is presented. *Id.*

However, this necessary element of intent or scienter, normally being a state of mind existing inside the defendant, is a difficult element to prove, and that portion of the pleadings may be pled in generality. *See In re Howard*, 12–02634–8–RDD, 2013 WL 3725155, at *5 (Bankr. E.D.N.C. July 15, 2013). A defendant is highly unlikely to admit to intentional wrong-doing, and instead rest behind a mask of silence in the early stages of a case. Rule 9(b) acknowledges this tension, providing that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "Because direct proof of intent is seldom available, the court in a dischargeability proceeding may infer the debtor's intent or lack of intent from the surrounding facts and circumstances." *In re Lamanna*, Case No. 11–02052–8–SWH, 2012 WL 909652 at *3 (Bankr. E.D.N.C. March 15, 2012) (quoting *Riddle Farm Equip., Inc. v. Boles* (*In re Boles*); 2005 WL 1288106, *4 (Bankr. M.D.N.C. Apr. 11, 2005)).

3. **The Present Pleadings**

In the original Complaint, Plaintiff alleged in relatively general terms that Defendant was a willing and profiting participant (but not the leader or originator) in a proven pyramid or Ponzi scheme resulting in a multi-million-dollar aggregate fraud. Defendant's status as a "net winner"

5

in the per se fraudulent system lead to the entry of a civil judgement for $93,159.71 rendered against him, along with multiple other defendants, in the civil action filed in the United States District Court for the Western District of North Carolina entitled *Kenneth D. Bell, in his capacity as court-appointed Receiver for Rex Venture Group, LLC d/b/a ZeekRewards.com v. Todd Disner, et al,* Case No. 3:14-cv-91-GCM (the "ZeekRewards Case").[3]

The ZeekRewards Case sought to recover earnings from net winners, in a financial pyramid scheme where about 700,000 participants are alleged to have lost over $700 million dollars. The resulting judgment in that action, including the existence of the debt and amount, is binding here, but that judgment contains no factual findings regarding Defendant's intent or level of involvement in the Ponzi scheme beyond being a "net winner" for the sum asserted plus interest. Neither the complaint nor the judgment in the ZeekRewards Case contain factual pleadings or findings specific to the Defendant (or any other net winner) that buttress actual fraud in the context of bankruptcy discharge litigation. The allegations and findings are limited to the existence of the scheme, that persons listed in an exhibit attachment (including Defendant) who participated therein, and that each person made a stated profit in the course of the scheme. The ZeekRewards Case judgment only mentions Defendant specifically in the context of his name appearing in the list of defendants contained in the exhibit attached to it along with the judgment liability amount.

In the Amended Complaint, Plaintiff builds on its original discharge complaint to make a few more allegations regarding Defendant's knowledge and intent. First, to support an allegation of knowledge of fraud, or knowledge of the "pyramid scheme" nature of the organization, it alleges that Defendant recruited at least two individuals, Ken Chickk and James Mooring, to invest in

---

[3] The net winner class in the ZeekRewards district court litigation consists of approximately 9,400 defendants. Mr. Tyndall does not contest that he was deemed a "net winner" and is bound by the judgment against him as an existing debt for the claim amount.

6

ZeekRewards, both of whom were also "net winners." Second, the Amended Complaint alleges that between December 2011 and August 2012, Defendant actively promoted and publicized the scheme by giving away bids and posting free daily advertisements on the ZeekRewards website.

Relying on these additional but sparse factual allegations, the limited findings in the ZeekRewards Case judgment, and the circumstantial evidence of an impossibly high rate of return on the investment, the Amended Complaint alleges Defendant committed "actual fraud."

### 4. Other ZeekRewards Cases

Looking again at the ZeekRewards Case judgment, the district court found Defendant received fraudulent transfers, resulting in his having a positive return on his investment, thereby deeming him a "net winner." However, beyond the general scheme, and the calculation of the amount of his net profits in the exhibit attached to the judgment, no finding is made as to Defendant's state of mind or level of intent in promoting the scheme. As previously held in the Order, the fact that Defendant received money in the course of fraudulent transfers made to him is not enough under *Husky*. Recitations of legal conclusions from the ZeekRewards Case is also not enough—Plaintiff must allege facts that would show Defendant committed fraud with the requisite fraudulent intent. Nothing in the ZeekRewards Case finds that Defendant did more than financially profit for a sum certain by his participation, along with thousands of other persons, in the fraudulent scheme primarily operated by other persons. As a result, Plaintiff cannot rely solely on the ZeekRewards Case judgment to establish the fraudulent activity elements set out in *Husky*. It must also allege with sufficient particularity activity or other indicators that Defendant acted with fraudulent intent.

Two recent cases have addressed this same issue. In *In re Sheppard*, No. 20-02895-5-DMW, 2022 WL 598323 (Bankr. E.D.N.C. Feb. 28, 2022), a sister court in this district granted a

Motion to Dismiss on a similar § 523(a)(2)(A) claim initiated by this same Plaintiff against another member of the ZeekRewards net winner class. Judge Warren found the complaint in *Sheppard*, as is the case here, made no particular allegations as to the defendant's involvement in or operations of the scheme and did not allege defendant otherwise acted with fraudulent intent when he was drawn to participate in the ploy. Instead, as here, that complaint relied primarily on the prior district court judgment and relied on the admitted participation in and profiting from the fraudulent scheme.

In contrast, the United States Bankruptcy Court for the Southern District of Florida denied a Motion to Dismiss on a similar § 523(a)(2)(A) claim initiated by Plaintiff against another member of the ZeekRewards net winner class. *See In re Reefe*, 638 B.R. 834 (Bankr. S.D. Fla. 2022). The *Reefe* court found the amended complaint there made sufficient additional allegations necessary to support actual fraud. Specifically, the *Reefe* plaintiff alleged that between 2008 and 2012, the Florida defendant opened ZeekRewards accounts for her infant children and other "puppet accounts" for the intended purpose of increasing her own payout, while also collecting commission payments on the same by forging signatures on checks. The *Reefe* amended complaint also contained detailed allegations concerning at least seven (7) individuals the defendant recruited to participate in the scheme, and the recruitment of her business partner into the scheme who in turn recruited and brought another at least seven (7) other individuals into the scheme with use of the same credit card and address for enrollment for all. The *Reefe* amended complaint showed how the defendant there knowingly built the base of her part of the pyramid, using knowingly fraudulent means like creating puppet accounts and forging check endorsements.

In the instant matter, the Amended Complaint does not contain detailed allegations comparable to those in the Southern District of Florida *Reefe* sufficient to meet Rule 9 heightened

pleading requirements. It alleges Defendant knew, or should have known, he was participating in a Ponzi scheme based on the circumstantial evidence of an "incredible rate of return on his investment." Plaintiff does not allege in the Amended Complaint Defendant helped create the Ponzi scheme or materially furthered and aided its advancement. While it alleges Defendant brought in two other investors, it does not show that he did so to drive the fraud. Standing alone, even assuming its veracity, this act does not support an intent to deceive or commit fraud.

More similar to pleading from the *Sheppard* case, beyond the allegations of recruiting two friends and mandatory advertisement participation, the Amended Complaint here provides no additional allegations beyond participation and profit in the scheme. The allegations made regarding the posting of daily advertisements and recruitment of two other parties were requirements to continue as an investor and participant. Those allegations, without more, do not allow an inference of fraudulent intent.

The actions of recruitment and advertisements being insufficient to show an actual fraud state of mind, Plaintiff is left hanging its proverbial hat on the "impossibly high" rate of return on investment. This allegation is circumstantial evidence of state of mind, sometimes referenced to as "badges of fraud" from which one may infer intent. *See e.g., In re Coley*, 608 B.R. 625, 636 (Bankr. E.D.N.C. 2019) (one badge of fraud is whether the value of the consideration received by the transferee was "reasonably equivalent" to the value of the asset transferred). Here, Defendant paid a total of $2,507.00 in bid purchases and payments, and received payments totaling $71,876.41, resulting in $69,369.41 in net winnings. Although the high rate of return may present as a badge of fraud, this court has already held "[t]he presence of a single badge of fraud is not sufficient to establish actual fraudulent intent." *Coley*, 608 B.R. at 636 (internal citations omitted). While the return rate indicates lack of insight on the part of Defendant, it does not, without more

details, reflect a deceitful intention to commit actual fraud against others. Allegations of actual fraud based solely on the presence of one badge of fraud plus the recruitment of two individuals, without more to buttress a reasonable inference of deceitful intent, are insufficient under the guidelines from *Husky*.

## CONCLUSION

For the foregoing reasons, the Amended Complaint does not meet the necessary standards and is subject to dismissal under Rule 12(b)(6) for failure to meet the particularity requirements of Rule 9(b).  It is therefore ORDERED, ADJUDGED, and DECREED that the Motion to Dismiss is granted. The effect of this order is stayed for fifteen days in order to avoid issuance of an order of general discharge pending this matter becoming final and binding. The staying of effect does not affect or extend the time for further motion or appeal.

## END OF DOCUMENT